**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHAMBERS OF<br>**SUSAN D. WIGENTON**<br>UNITED STATES DISTRICT JUDGE | MARTIN LUTHER KING COURTHOUSE<br>50 WALNUT ST.<br>NEWARK, NJ 07101<br>973-645-5903 |

January 20, 2021

John H. Yauch, Esq.
Office of the Federal Public Defender
1002 Broad Street
Newark, NJ 07102
*Counsel for Defendant*

David Elliott Malagold, Esq.
Office of the United States Attorney
970 Broad Street
Suite 700
Newark, NJ 07102
*Counsel for the United States of America*

**LETTER OPINION FILED WITH THE CLERK OF THE COURT**

  **Re:** *United States v. Arzola*
     **Criminal Action No. 06-569 (SDW)**

Counsel:

  Before this Court is Defendant Benjamin Arzola's ("Defendant") Motion for Compassionate Release under the First Step Act, 18 U.S.C. § 3582(c)(1)(A), and an alternative application for home confinement pursuant to 18 U.S.C. § 3624(c)(2). This Court having considered the parties' submissions, and for the reasons discussed below, denies Defendant's Motion.

**DISCUSSION**

A.

  Although a district court generally has limited authority to modify a federally-imposed sentence once it commences, *see United States v. Epstein*, Crim. No. 14-287, 2020 WL 1808616, at *2 (D.N.J. Apr. 9, 2020); *see also Dillon v. United States*, 560 U.S. 817, 825 (2010), the First Step Act ("FSA"), 18 U.S.C. § 3582(c)(1)(A)(i), permits district courts to grant compassionate release where there exist "extraordinary and compelling reasons" to reduce a sentence. The statute provides, in relevant part, that:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons [("BOP")] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c). Accordingly, under the FSA, "a defendant seeking a reduction in his term of imprisonment bears the burden of establishing both that he has satisfied 1) the procedural prerequisites for judicial review, and 2) that compelling and extraordinary reasons exist to justify compassionate release." *Epstein*, 2020 WL 1808616, at *2. First, "a defendant seeking a reduced sentence must ask the BOP to do so on his or her behalf," and either "wait thirty days for the BOP to respond" or "exhaust all available administrative appeals after receiving an adverse decision." *United States v. McDonald*, Crim. No. 09-556, 2020 WL 3638280, at *3 (D.N.J. July 2, 2020) (citing *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020)). Then, a court may reduce an inmate's sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) "if the court finds that (1) extraordinary and compelling reasons warrant a reduction, (2) the reduction would be consistent with applicable policy statements issued by the Sentencing Commission, and (3) the applicable sentencing factors under § 3553(a) warrant a reduction."[1] *United States v. Sparrow*, Crim. No. 18-653, 2020 WL 4364328, at *2 (D.N.J. July 30, 2020) (internal quotations omitted).

B.

Defendant was arrested on June 30, 2005, in connection with a large cocaine distribution operation in Jersey City, New Jersey. (D.E. 269 at 2; D.E. 274 at 3.)[2] On October 26, 2007, a jury found Defendant guilty of conspiracy to distribute and possess five or more kilograms of cocaine with intent to distribute a controlled substance pursuant to 21 U.SC. §§ 841(a) and 841(b)(1)(A). (D.E. 118 at 7; *see* D.E. 1 at 2.) On July 28, 2008, this Court sentenced Defendant to 324 months

---

[1] The Sentencing Commission's Policy Statement identifies four categories of "extraordinary and compelling reasons," including: (A) the defendant's medical condition; (B) the defendant's age of at least 65-years combined with "serious deterioration in physical or mental health because of the aging process" when he or she "has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less;" (C) the defendant's unique family circumstances pertaining to caregivers of the defendant's minor children or spouse; or (D) other extraordinary and compelling reasons "other than, or in combination with, the reasons described" in the prior provisions. U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13, cmt. n.1 (A)–(D). The Policy Statement further defines medical conditions as those where the defendant is (i) suffering from a terminal illness, or (ii) suffering from a serious physical or medical condition, serious functional or cognitive impairment, or deteriorating physical or mental health because of the aging process, "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13, cmt. n.1 (A)(i)–(ii).

[2] All page references to Docket Entry Numbers 118 and 274 are to the CM/ECF pagination generated in the upper right-hand corner.

of imprisonment and 5 years of supervised release. (D.E. 146.) Following an amendment to the United States Sentencing Guidelines, the Defendant's sentence was reduced to 262 months of imprisonment. (D.E. 236.) Defendant is currently serving his sentence at the Federal Correctional Institution, Schuylkill ("FCI Schuylkill") in Pennsylvania. (D.E. 269 at 3, 274 at 2); BOP, Find An Inmate (Jan. 19, 2020, 9:00 A.M.), www.bop.gov/inmateloc/. Defendant is projected to be released on June 1, 2026, inclusive of good time credit. *See id.*; (D.E. 269 at 3 (citing Defendant's Exhibit F).)

On September 8, 2020, FCI Schuylkill Warden Scott Finley denied Defendant's August 21, 2020 request for compassionate release. (D.E. 269-1 at 3.) Defendant filed a *pro se* Motion for Compassionate Release on September 1, 2020, which was supplemented by counsel on November 10, 2020 (together, "Motion").[3] (D.E. 264; D.E. 269.) The Government opposed the Motion and Defendant replied. (D.E. 274; D.E. 277.)

Defendant contends that his release is warranted because he suffers from mitral valve prolapse, "borderline high cholesterol levels," and high blood pressure (or "prehypertension") which, when coupled with the COVID-19 pandemic and confinement at FCI Schuylkill, constitute "extraordinary and compelling reasons" under the FSA. (D.E. 269 at 4–8.) Defendant also asserts that: (i) he has served a significant portion of his sentence without disciplinary infractions; (ii) he poses no danger to any person or the community, evidenced by his otherwise clean criminal history and nonparticipation in violent activity associated with his convicted offense, and (iii) he has an ill father and two daughters whom he seeks to reunite with post-incarceration.[4] (*Id.* at 8–9.)

C.

This Court finds that Defendant has not established any "compelling and extraordinary reason" to justify his release as required by the FSA. *See Epstein*, 2020 WL 1808616, at *2. First, although Defendant purportedly suffers from mitral valve prolapse, he acknowledges that this medical condition is not typically serious. (D.E. 269 at 4.) Rather, Defendant claims, and the Government does not dispute, that mitral valve prolapse can lead to other serious heart conditions which require surgical attention to prevent heart failure. (*Id.*) However, Defendant admittedly has not required medical attention to treat his mitral valve prolapse while in the BOP's custody. (*See id.* at 4–5.) While this Court is sympathetic to Defendant's concerns, mitral valve prolapse—even when coupled with borderline high cholesterol and high blood pressure—does not constitute an "extraordinary and compelling reason" to justify release.[5] *See United States v. Green*, Crim. No.

---

[3] This Court agrees with the parties' position that exhaustion has been satisfied because Defendant's supplemental brief was filed more than 30 days from Warden Finley's receipt of Defendant's request for compassionate release. *See United States v. Harris*, 973 F.3d 170, 171 (3d Cir. 2020); *see also United States v. Huntington*, Crim. No. 19-133, 2020 WL 7693992, at *2 (D.N.J. Dec. 28, 2020).

[4] Defendant does not state any additional information regarding his ill father or two daughters' caregiving circumstances to suggest that release is appropriate. (*See* D.E. 264; D.E. 269); *see also* U.S.S.G. § 1B1.13, cmt. n.1 (C)–(D).

[5] Moreover, the Centers for Disease Control and Prevention ("CDC") does not include mitral valve prolapse on its list of health conditions that increase the risk of serious illness from the virus that causes COVID-19. *See* CDC, People

05-205, 2020 WL 3642860, at *2, 5 (W.D. Pa. July 6, 2020) (denying compassionate release despite defendant's mitral valve prolapse and high blood pressure, which were being addressed by the BOP); *see also United States v. Williamson*, Crim. No. 18-084, 2020 WL 4551016, at *2 (E.D.N.C. Aug. 6, 2020) (denying compassionate release where defendant failed to demonstrate that she was not expected to recover from mitral valve prolapse, among other ailments, as required under the Sentencing Commission's Policy Statement (citing U.S.S.G. § 1B1.13 cmt n.l (A)(ii)).

Nor has Defendant established that his claimed medical conditions substantially diminish his ability to provide self-care, even when combined with the realities of COVID-19. (*See generally* D.E. 264; D.E. 269.) Defendant's medical records do not reflect any history or confirmed diagnosis of borderline high cholesterol or high blood pressure.[6] (*See generally* D.E. 269 at 5 (citing a lab report dated February 2020 and examination notes from July 2017)); *see, e.g.*, *United States v. Carazolez*, Crim. No. 18-0081, 2020 WL 5406161, at *4 (D.N.J. Sept. 9, 2020) (stating that "general allegations of medical condition[s], without the necessary specificity, are insufficient to establish the rare circumstances that would justify a grant of compassionate release" (internal quotations omitted)); *see also United States v. Jones*, Crim. No. 02-0778, 2020 WL 7640944, at *2 (E.D. Pa. Dec. 23, 2020) (denying compassionate release where medical records did not corroborate defendant's purportedly high cholesterol and borderline diabetes). Moreover, Defendant fails to aver that he has been denied treatment or medication to regulate "borderline high cholesterol" and "prehypertension." (*See generally* D.E. 264; D.E. 269); *see, e.g.*, *United States v. Ackerman*, Crim. No. 11-740, 2020 WL 5017618, at *5 (E.D. Pa. Aug. 25, 2020) ("Where, as here, there is no indication that the defendant's hypertension cannot be properly controlled via medication or other appropriate medical care, courts routinely hold that compassionate release is not warranted.") (collecting cases); *accord United States v. Williams*, Crim. No. 1610, 2020 WL 4210476, at *3 (S.D. Miss. July 22, 2020) (noting defendant's failure to demonstrate that "he is unable to receive treatment while incarcerated")

Defendant also argues that FCI Schuylkill lacks the necessary safety measures for social distancing to prevent the spread of COVID-19. (D.E. 269 at 6.) This Court is sympathetic to Defendant's concerns regarding the risk of COVID-19 for inmates, particularly in cramped conditions. Although there was a recent spike in the number of COVID-19 cases at FCI Schuylkill,

---

With Certain Medical Conditions (Jan. 19, 2020, 9:00 A.M.), http://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions html.

[6] Indeed, this Court's review of Defendant's medical records reflects that he denied having hypertension and cardiovascular issues on various occasions while in the BOP's custody. (*See* Defendant's Exhibit B at 23; Defendant's Exhibit C at 53, 71.) In addition, as the Government notes, this Court found no mention of mitral valve prolapse in Defendant's post-incarceration medical records. (*See* D.E. 274 at 6 (stating that the only record evidence of Defendant's purported mitral valve prolapse is "in the Presentence Investigation Report, when Defendant, at age 41, reported that he was diagnosed with this condition in high school").)

Even if Defendant could substantiate that he suffers from high blood pressure (defined as hypertension by the CDC), it falls under the CDC's list of conditions that "***might*** increase an individual's risk for severe illness from the virus that causes COVID-19." *See* CDC, People With Certain Medical Conditions (Jan. 19, 2020, 9:00 A.M.), http://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions html (emphasis added). Nor is high cholesterol a condition that places a person at an increased risk of the same. (*See id.*)

it appears that inmates testing positive are confined to a facility separate from the satellite camp where Defendant is housed. (*See* D.E. 275; D.E. 274 at 13–14.) Moreover, since December, 2020, FCI Schuylkill has seen a decrease in the number of positive COVID-19 cases at its facility. (*Compare* D.E. 275 (stating that as of December 21, 2020, there were 155 positive COVID-19 cases at FCI Schuylkill)), *with* BOP, COVID-19 (Jan. 19, 2021, 9:00 AM), https://www.bop.gov/coronavirus (reflecting 52 positive cases among FCI Schuylkill inmates). This significant decrease in the number of confirmed positive cases suggests that FCI Schuylkill's quarantine and isolation protocols are preventing the virus's further spread. (*See* D.E. 274 at 8–15.) As the Third Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *Raia*, 954 F.3d at 597.

Finally, Section 3553(a) likely acts as an independent bar to Defendant's request. 18 U.S.C. § 3582(c)(1)(A). This Court must ensure that, should Defendant's sentence be reduced, the reduced sentence still reflects the seriousness of his offense. *See* 18 U.S.C. § 3553(a). Here, Defendant's conviction involved his participation in a sizeable cocaine distribution organization. (*See* D.E. 269 at 2; D.E. 274 at 16.) Defendant participated in a drug trafficking organization along with his younger brothers and co-defendants, by arranging the supply of cocaine and cutting agents to the organization. (*See* D.E. 274 at 16.) Defendant admits that the convicted offense "is a serious one given the scope of conduct engaged in by members of the conspiracy." (D.E. 269 at 8.) Although Defendant had no prior criminal history, considering the seriousness of Defendant's crime, reducing his sentence further would be incompatible with Section 3553(a). The length of Defendant's sentence has already been meaningfully reduced by over five years, from 324 months to 262 months. (D.E. 146; D.E. 236.) A further reduction would not "reflect the seriousness of the offense," "promote respect for the law," or "provide just punishment." *See* 18 U.S.C. § 3553(a)(2)(A). It would also create an "unwarranted sentence disparit[y] among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6); *see Kimbrough v. United States*, 552 U.S. 85, 107 (2007) (noting that "uniformity remains an important goal of sentencing").

This Court acknowledges Defendant's legitimate concerns regarding possible contraction of the virus causing COVID-19. However, speculation about what may or may not occur at some point in the future does not constitute a "compelling and extraordinary" reason for release. This Court is therefore satisfied that release is not warranted.

**CONCLUSION**

Defendant's Motion for Compassionate Release is **DENIED**[7] without prejudice. An appropriate order follows.

---

[7] Defendant requests, in the alternative, that he be designated to serve the remainder of his sentence under home confinement. (D.E. 269 at 2, 8.) Although this Court does not have the authority to order such relief, it does have the authority to issue a recommendation to the BOP. *See* 18 U.S.C. § 3621(b)(4) (stating that the BOP may consider "any statement" by the sentencing court "recommending a type of penal or correctional facility"); *United States v. Ceballos*, 671 F.3d 852, 856 n.2 (9th Cir. 2011) (noting that "district courts [have] the authority to make (or not make) non-

5

                                                        /s/ Susan D. Wigenton
                                            **SUSAN D. WIGENTON, U.S.D.J.**

Orig:   Clerk
cc:     Parties

---

binding recommendations to the [BOP] at any time"). However, this Court declines to issue a recommendation at this time because it appears that the BOP has already taken corresponding steps to consider Defendant's eligibility for home confinement. (*See* D.E. 269-1.)